IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL J. MURPHY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 07 C 3804 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Petitioner Michael J. Murphy ("Murphy") was sentenced on December 3, 2003, to 365 months of imprisonment and 3 years of supervised release, with a $1,400.00 assessment and $15,334,242.46 in restitution. In his pending "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody," (Dkt. No. 1), Murphy asks this court to vacate his sentence with prejudice and order his immediate release from custody. For the reasons set forth below, Murphy's motion is denied.

BACKGROUND

On February 5, 2003, Murphy and his lawyer met with an Assistant U.S. Attorney, an agent from the Federal Bureau of Investigation, and two attorneys from the Securities and Exchange Commission to discuss a fraudulent investment scheme that Murphy had been running since the mid-1980s. Murphy confessed to the scheme that same day, and a criminal complaint was filed against Murphy on February 6, 2003. *See United States v. Murphy*, 03 CR 138 (N.D. Ill.). As part of his confession, Murphy also acknowledged that he had no legitimate source of

1

income during the time he was conducting his fraudulent investment scheme.

On March 13, 2003, then Chief Judge Charles P. Kocoras held a hearing on the government's motion for an order restraining Murphy's assets and allowing the government to preserve the value of these assets by selling them and depositing the proceeds of the sale into an escrow account. Murphy's lawyer, Barry Spevack ("Spevack"), attended the hearing and did not object to the restraint of Murphy's assets. Spevack did indicate, however, that he was withdrawing from the case, and he sought to preserve the right of new counsel to object to the sale of the assets. Chief Judge Kocoras entered the Order in its entirety, but directed the government not to begin selling the property until the Federal Defender came into the case and had the opportunity to raise any objections to the selling of Murphy's assets. Appointed attorney Luis Galvan ("Galvan") began representing Murphy after Spevack withdrew from the case.

On April 15, 2003, a superceding indictment was returned against Murphy, charging him with fourteen counts of mail fraud in violation of 18 U.S.C. § 1341. *United States v. Murphy*, 03 CR 138 (N.D. Ill.) (Dkt. No. 8) (the initial indictment was returned against Murphy on April 1, 2003). Specifically, the superceding indictment alleged that Murphy falsely represented to over 200 victims that he had invested their money in income-generating investments when, in fact, he did not invest the victims' money but used it to pay returns to previous investors and to support a lavish lifestyle for himself and his friends. Both the initial indictment and the superceding indictment included a separate provision alleging "that certain property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c)." (Dkt. No. 3 at 13; Dkt. No. 8 at 17.)

On June 24, 2003, Murphy entered a blind plea of guilty to all mail fraud counts in the superceding indictment; however, Murphy did not agree to the forfeiture allegations at that time. Nevertheless, the government sold certain of Murphy's assets according to the terms of the March 13, 2003 Order on June 28, 2003, and August 6-9, 2003, having ascertained that Galvan had no objection to the sale of these assets.

In September 2003, Murphy filed a number of *pro se* motions, including a "Motion to Substitute Counsel and Return Illegally Seized Attorneys Fees," "Motion for Withdrawal of Plea," "Motion for Emergency Hearing," "Motion for Return of Seized Property," and "Motion for Hearing on Pre-Trial Restraint of Assets Needed to Pay Legal Fees and Defense Cost." In response to the motion to substitute counsel, the court granted Galvan leave to withdraw as counsel of record on September 30, 2003, and granted Michael J. Petro ("Petro") leave to file his appearance on behalf of Murphy. The court also held a two-day hearing regarding the restraint and sale of Murphy's assets on October 2, 2003 and October 24, 2003. Murphy's motions for return of illegally seized property were denied by the court on October 24, 2003, when the court concluded that "the government has overwhelmingly established probable cause in this case for the restraint of these assets both under the facts and under the law" and "the value of those items were preserved as much as they could be preserved as a result of that sale." (10/24/2003 Hr'g Tr. at 173:19-174:6.) On November 6, 2003, the court denied Murphy's motion for withdrawal of plea based on ineffective assistance of counsel.

On November 17-19, 2003, a jury trial was held on the forfeiture allegations brought against Murphy. The jury returned a verdict against Murphy on November 19, 2003, finding that the property in the forfeiture allegations "constitutes and is derived from proceeds traceable to

the mail fraud scheme devised by Michael Murphy." (Dkt. No. 68 at 1.) Murphy was sentenced on December 3, 2003, to 365 months of imprisonment and 3 years of supervised release, with a $1,400.00 assessment and $15,334,242.46 in restitution. (This judgment was amended on March 4, 2004 to reflect a restitution amount of $15,217,130.76.) All proceeds from the sale of Murphy's forfeited assets, minus administrative expenses incurred by the U.S. Marshal's Office, were applied toward the payment of Murphy's restitution obligation. (*See* 12/3/2003 Preliminary Order of Forfeiture; 4/26/2005 Final Order of Forfeiture; 9/19/2006 Final Order of Forfeiture as to Certain Substitute Assets.)

After filing Murphy's notice of appeal on December 19, 2003, Petro withdrew from the case and the Federal Public Defender's Office was appointed by the Seventh Circuit to represent Murphy on appeal. Before the Seventh Circuit Murphy was represented by Kent V. Anderson ("Anderson"), Senior Staff Attorney for the Office of the Federal Public Defender. Murphy attempted to file a *pro se* brief in the appellate court, but the Seventh Circuit rejected his filing after determining that Murphy was represented by counsel. Through Anderson, Murphy argued before the Seventh Circuit that his sentence was unconstitutional pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), and that his sentence violated the *ex post facto* clause because the court relied upon the Sentencing Guidelines as amended on January 25, 2003, at which point the majority of the scheme had already been consummated. On August 25, 2005 the Seventh Circuit affirmed the district court's calculation of Murphy's sentence, but ordered a limited remand in light of *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005). *See United States v. Murphy*, No. 03-4291 (7th Cir. Aug. 25, 2005).

4

This court confirmed that it would have imposed the same sentence had the court known the Guidelines were merely advisory, and the Seventh Circuit affirmed Murphy's sentence on May 30, 2006. *United States v. Murphy*, No. 03-4291 (7th Cir. May 30, 2006). Murphy's petition for *certiorari* was denied by the Supreme Court on October 2, 2006. This motion timely followed.

## LEGAL STANDARD

Under § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). If the court finds that the sentence was imposed in violation of the petitioner's constitutional rights, the court must vacate and set aside the judgment and discharge the petitioner, resentence the petitioner, grant a new trial, or correct the sentence. 28 U.S.C. § 2255(b).

## ANALYSIS

Murphy asserts four main arguments in his § 2255 motion: (1) his double jeopardy rights were violated when the seizure and sale of his assets was followed by the custodial sentence issued by the court on December 3, 2003; (2) his due process rights were violated by the sale of his assets without proper judicial authority; (3) he was deprived counsel of his choice because his assets to pay for counsel were seized and sold by the government; and (4) the court did not have jurisdiction to enter the amended restitution order on March 4, 2004. Murphy also suggests that the court erred in rejecting Murphy's motion to withdraw his plea, and he argues strenuously

5

that his counsel "failed him at all steps of the proceedings." (Murphy Mem. at 55.)

1. <u>Procedural Default</u>

Generally, the proper method for addressing alleged errors at trial and sentencing is through direct appeal. *Scott v. United States*, 997 F.2d 340, 342 (7th Cir. 1993) ("Persons who believe that district judges have not enforced all of their rights must appeal; having bypassed that opportunity they may not demand belated review."). Accordingly, claims that could have been raised on direct appeal, but were not, are barred from consideration under § 2255 unless the movant can show cause and prejudice for his failure to raise these issue on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Murphy asserts that he is not required to prove cause and prejudice for his failure to raise his claims on direct appeal because he raises "a substantial Constitutional issue." (Murphy Mem. at 34-35.) In support of this assertion, Murphy cites *United States v. Frady*, 456 U.S. 152 (1982). *Frady*, however, emphasizes the need for a convicted defendant to demonstrate both cause *and* prejudice before a court will excuse the prisoner's failure to raise his constitutional issues on direct appeal. *Id.* at 167-68. *Frady* does suggest that the prejudice prong can be satisfied if an "error of constitutional dimensions" infects an entire trial. *Id.* at 170. However, *Frady* also makes clear that a convicted defendant cannot be afforded relief under § 2255 unless he also demonstrates cause for his procedural default. *Id.* at 168. The mere presence of a constitutional issue in a § 2255 motion does not by itself demonstrate that a defendant who has already had "an opportunity to present his federal claims in federal trial and appellate forums" should be allowed another opportunity to have his claims reviewed by a federal court. *Id.* at

166.[1]

Ineffective assistance of appellate counsel is one means of demonstrating cause and prejudice for a procedural default. *Lee v. Davis*, 328 F.3d 896, 900 (7th Cir. 2003). Whether counsel is constitutionally ineffective is evaluated under the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985). Thus, ineffective assistance of counsel will be found where the defendant demonstrates that counsel's performance was deficient and that it prejudiced the defense. *Gray*, 800 F.2d at 646 (citing *Strickland*, 466 U.S. at 686-87). Applying this standard to appellate counsel generates the following test:

> [The court] must first analyze the trial court record to determine whether [defendant's] appellate attorney, in fact, ignored "significant and obvious" issues. We must then compare each neglected issue to, in this case, the issue actually raised on appeal.
>
> * * *
>
> Only if an ignored issue is "clearly stronger" than the arguments raised on appeal will the attorney's performance be considered constitutionally deficient (thereby satisfying the first prong of the *Strickland* test). To establish prejudice—the other component of the *Strickland* test—[the defendant] must show that there is a reasonable probability that, but for the deficient performance of his attorney, the result of the appeal would have been different.

*Suggs v. Untied States*, 513 F.3d 675, 678 (7th Cir. 2008) (internal citations omitted). "Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of

---

[1] Without further argument or elaboration, Murphy also cites *Kelly v. United States*, 29 F.3d 1107 (7th Cir. 1994) (overruled on other grounds). *Kelly* stands for the proposition that jurisdictional issues may be raised in a § 2255 motion despite failure to raise such issues on direct appeal. In this case, Murphy has questioned the court's jurisdiction to authorize the sale of his assets and to amend the restitution order. As explained in detail below, questions regarding forfeiture and restitution orders are not properly raised under § 2255. These claims are therefore not properly before the court.

counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996); *see also Rodriguez v. United States*, 286 F.3d 972, 985 (7th Cir. 2002).

In his 61-page memorandum in support of his § 2255 motion, Murphy only mentions the performance of his appellate counsel twice. First, Murphy notes that his appellate counsel "declined to include any of Murphy's issues addressed in the 'pro se brief' the Circuit Clerk had returned to Murphy." (Murphy Mem. at 28). However, Murphy does not identify any specific issue that was neglected by appellate counsel. The *pro se* brief that Murphy attempted to file on appeal (attached as an exhibit to Murphy's Reply brief) included a laundry list of thirty-one reasons why his trial counsel was ineffective, two reasons why his guilty plea should be disregarded, eight errors allegedly committed by the court, two alleged due process violations, and three examples of prosecutorial misconduct. At most, this document demonstrates that Murphy's appellate counsel may have been aware of some of Murphy's concerns. It does not demonstrate that each of these concerns was proper fodder for an appellate brief. Murphy's bare-bones argument does not begin to address why the issues now raised in his § 2255 motion are clearly stronger than the issues actually raised on appeal, nor does Murphy explain how the result of the appeal would have been different if these issues had been raised before the Seventh Circuit. As explained in detail below, the court finds no prejudice to Murphy regarding the procedures that were followed in this case. This court has no reason to believe the Seventh Circuit would have come to a different conclusion, such that the Seventh Circuit would not have affirmed Murphy's sentence had these issues been raised on appeal.

Second, Murphy asserts that the performance of *all* of his attorneys—Spevack, Galvan, Petro, and Anderson—collectively "amounted to substantive violations of ineffective assistance

of counsel on the order of <u>United States -v- Cronic</u>, 466 US 648, 80 L.Ed2d 657, 104 S.Ct 2039 (1984)." (*Id.* at 50.) "As a general matter, only a few circumstances give rise to a *per se* violation of the Sixth Amendment right to counsel: no counsel present at all, or counsel not present at critical stages; complete failure to cross-examine or subject the opposing case to the adversarial process; an actual conflict of interest; and failure to file a requested appeal." *Cole v. United States*, 162 F.3d 957, 958 (7th Cir. 1998) (citing *Cronic*, 466 U.S. at 658-61). The court finds no evidence in the record before it that Anderson materially abdicated his appellate duties in this fashion, and Murphy has made no further argument on this point.

Because Murphy has failed to demonstrate cause and prejudice sufficient to excuse his procedural default, the court declines to further address the constitutional claims that Murphy now attempts to raise in his § 2255 motion.

2. <u>Ineffective Assistance of Counsel</u>

There is one important exception to the rule requiring cause and prejudice: claims asserting ineffective assistance of trial counsel can be raised in a § 2255 motion even if they were not raised on direct appeal. *Torzala v. United States*, 545 F.3d 517, 524 (7th Cir. 2008) (citing *Massaro*, 538 U.S. at 509). The reason for this exception is that ineffective assistance of counsel claims often require an analysis of evidence not included in the original trial record. *United States v. Spence*, 450 F.3d 691, 694 (7th Cir. 2006).

In this case, Murphy argues that his trial counsel was ineffective for: (1) failing to notify Murphy of the March 13, 2003 Order and the subsequent sale of Murphy's assets in June and August 2003 (Spevack and Galvan) (Murphy Mem. at 38-40, 44, 54); (2) failing to object to the sale of Muphy's assets (Galvan) (*id.* at 41, 44); (3) "trying to deceive Murphy into signing an

9

'unopposed Forfeiture Motion' on or about August 21, 2003" (Galvan) (*id.* at 41); (4) offering "ill-prepared" and "ludicrous" remarks to the jury on Murphy's behalf (Petro) (*id.* at 44-45, 49); (5) failing to investigate Murphy's legitimate business and to review business records and documents supplied by Murphy's accountants (Petro) (*id.* at 45); (6) failing to present witnesses on behalf of Murphy during the jury trial (Petro) (*id.* at 45); (7) failing to distinguish between pre- and post-CAFRA assets for purposes of setting forth an *ex post facto* argument regarding forfeiture (Petro) (*id.* at 45); (8) failing to file a notice of appeal regarding the forfeiture trial (Petro) (*id.* at 46); (9) failing to procure civilian clothing for Murphy to wear at trial (Petro) (*id.* at 46); and (10) failing to object to the forfeiture trial as a whole (Petro) (*id.* at 54).[2]

Each of these allegations addresses counsels' performance during the forfeiture proceedings, which ultimately resulted in the court's forfeiture orders. By its plain language, however, relief under § 2255 is limited to issues of custody and liberty. *Virsnieks v. Smith*, 521 F.3d 707, 722 (7th Cir. 2008) ("Section 2255 affords relief to prisoners who are 'in custody' and who 'claim [ ] the right to be released.") (quoting 28 U.S.C. § 2255). To satisfy the custody requirement of the habeas corpus statute, "habeas petitioners must establish that they are subject to conditions that 'significantly restrain . . . [their] liberty.'" *Id.* at 717-18 (quoting *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)). Relief under § 2255 is only appropriate if the petitioner has raised an issue that impacts his or her custodial sentence in this manner. *Barnickel*

---

[2] Murphy also argues that he received essentially no assistance of counsel, along the terms set forth in *United States v. Cronic*, 466 US 648 (1984), (Murphy Mem. at 32, 50-51), and that his counsel generally failed to protect him "at all phases of the proceedings." (*Id.* at 33-34, 55.) Murphy offers no explanation as to why his counsel should be considered to have effectively abandoned his cause as required by *Cronic*, and the record on its face does not appear to support this argument. Without more, the court declines to address the merits of this argument.

*v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) (Section 2255 "is not available to challenge an order of restitution imposed as part of a criminal sentence" because "the relief requested in such a case [does] not qualify as a 'right to be released'") (citing *Smullen v. United States*, 94 F.3d 20 (1st Cir. 1996)); *acccord United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003) ("We join a majority of circuits in holding that a federal prisoner cannot challenge the restitution portion of his sentence using 28 U.S.C. § 2255, because this statute affords relief only to prisoners claiming a right to be released from custody.") (citations omitted). Accordingly, our federal system of justice does not allow for collateral relief regarding final rulings on issues of property—"orders of restitution, fines and the revocation of medical and driver's licenses do not satisfy the 'in custody' requirement." *Virsnieks*, 521 F.3d at 718 (citations omitted). In other words, legal issues that do not affect a liberty right are heard by the federal courts only through direct appeal. This is true even if a prisoner has alleged ineffective assistance of counsel in relation to the property issues raised before the trial court. *Barnickel*, 113 F.3d at 705-706. Moreover, the mere fact that Murphy is in custody does not change the nature of his argument from one regarding property rights to one regarding liberty rights. *Cf. Virsnieks*, 521 F.3d at 721 ("a court does not have 'pendent' jurisdiction over non-cognizable habeas claims").

In this case, Murphy's custodial sentence was not based on any of the court's or jury's forfeiture findings, nor was it otherwise related to the various forfeiture proceedings. The only factors affecting Murphy's custody are those with which he agreed when he entered a plea of guilty on June 24, 2003 (the material elements of Counts 1-14) and those with which he agreed at his sentencing hearing on December 3, 2003 (that the loss attributable to his illegal conduct "exceed[ed] $7 million"). (*See* 12/3/2003 Sentencing Tr. at 4:11-14.) Because Murphy has not

argued that his attorneys were ineffective in counseling Murphy to plead guilty or for agreeing to this loss amount at sentencing, the issue of Murphy's custody is simply not before the court.

On the other hand, the court acknowledges that Murphy's ineffective assistance of counsel claim could be seen to tangentially impact his custody in one respect. As Murphy has argued, his "primary complaint is that his attorneys; throughout the proceedings, failed to protect his due process rights which subsequently resulted in him suffering double jeopardy violations." (Murphy Reply at 2.) From this position Murphy argues that "he is illegally incarcerated in violation of the Fifth Amendment to the United States Constitution." (Murphy Mem. at 1.) This argument is ultimately unsuccessful, however, because double jeopardy protections do not apply to Murphy's situation.

Generally, where criminal forfeiture and imprisonment are both set forth in the same indictment—as they were in this case—double jeopardy is not implicated. *United States v. Torres*, 28 F.3d 1463, 1464 (7th Cir. 1994). Murphy notes that Chief Judge Kocoras held a separate proceeding *prior* to the issuance of Murphy's criminal indictment, and argues that jeopardy attached at that time. The problem with Murphy's argument is that the prohibition against double jeopardy only applies where the government has "punish[ed] twice, or attempt[ed] a second time to punish criminally for the same offense." *United States v. Ursery*, 518 U.S. 267, 273 (1996) (citations omitted). In this case, the March 13, 2003 Order was simply not punitive in nature. *Compare United States v. Austin*, 509 U.S. 602, 610 (1993) (in context of Eighth Amendment, "the question is not . . . whether forfeiture . . . is civil or criminal, but rather whether it is punishment."). Under 21 U.S.C. § 853(e)(1)(B), the court is authorized to "enter a restraining order or injunction . . . or take any other action *to preserve the availability of [certain*

*forfeitable property] for forfeiture*." 21 U.S.C. § 853(e)(1)(B) (emphasis added). Accordingly, the March 13, 2003 Order states that any proceeds from the sale of Murphy's assets "shall be retained in the United States Marshals Service's seized assets management account pending further order of this court." (3/13/2003 Order at 2.) The March 13, 2003 Order did not seek to permanently divest Murphy of his assets—if Murphy had prevailed at trial, the money held in escrow would have been returned to him. Murphy complains that his assets were depleted when the government did not fetch an appropriate price for certain assets at auction, but this concern does not make the March 13, 2003 Order punitive in nature. Noting that "there is a substantial probability that the United States will prevail on the issue of forfeiture," Chief Judge Kocoras found that "[t]he need to preserve the availability of the property subject to forfeiture through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered." (3/13/2003 Order at 2.) This balancing test is specifically prescribed by statute, *see* 21 U.S.C. § 853(e)(1)(B), and illustrates the remedial nature of the proceeding. Because Murphy's double jeopardy argument fails as a matter of law, he cannot have been prejudiced by his counsel's failure to raise this issue at trial.

With no viable issue affecting Murphy's custody before the court, the court cannot proceed under § 2255 to address the remainder of Murphy's ineffective assistance of counsel claim.

3. Lack of Prejudice

The court believes that, for the reasons stated above, Murphy's arguments are not properly raised in the pending § 2255 motion. However, the court also recognizes that this case was procedurally unusual in a number of ways. Particularly of note, if Murphy was entitled to

13

the effective assistance of counsel in the context of his criminal[3] forfeiture proceedings,[4] it would have been difficult for Murphy to raise his ineffective assistance of counsel claim on direct appeal, due to an undeveloped record; on the other hand, § 2255 does not allow Murphy to raise his ineffective assistance of counsel claim through collateral review because § 2255 only addresses issues of custody. Murphy's right to the effective assistance of counsel in relation to the criminal forfeiture proceedings therefore appears to be a right without a remedy.

---

[3] There has been some confusion in this case regarding whether the forfeiture authorized on March 13, 2003 was civil or criminal in nature. Although the March 13, 2003 Order was entered before Murphy had been indicted, the Order was nevertheless sought pursuant to the criminal forfeiture provisions of the United States Code. (*See* 3/13/2003 Order at 1) (restraining order sought "pursuant to the provisions of Title 21, United States Code, Section 853(e)(1), as incorporated through Title 18, United States Code, Section 982(b)(1) which provides jurisdiction to enter restraining orders or injunctions and take such other action as the court shall deem necessary to preserve the availability of property forfeitable to the United States").

Pursuant to 28 U.S.C. § 2461(c), the government then included notice of the forfeiture in the criminal indictment and sought forfeiture of Murphy's property as part of the sentence in the criminal case. Section 2461(c) allows the government to follow these (criminal) forfeiture procedures whenever "a person is charged in a criminal case with a violation of an Act of Congress for which the civil *or* criminal forfeiture of property is authorized." 28 U.S.C. § 2461(c) (emphasis added). Thus, at every stage of this litigation the forfeiture sought by the government and ordered by the court was criminal in nature. Ultimately, Murphy's property was forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C), by way of 18 U.S.C. § 1956(c)(7)(A) and 18 U.S.C. § 1961(1)(B) (which includes the offense of mail fraud (18 U.S.C. § 1341)).

[4] Neither party addresses the question of whether such a right exists. The Seventh Circuit has found no right to counsel in relation to civil forfeiture proceedings. *United States v. 7108 W. Grand Ave.*, 15 F.3d 632, 635 (7th Cir. 1994). However, the Seventh Circuit has also recognized that "[c]ivil forfeiture . . . is an *in rem* action, with lighter evidentiary burdens and weaker procedural safeguards than criminal forfeiture would require." *United States v. Michelle's Lounge*, 126 F.3d 1006, 1007 (7th Cir. 1997) (*Michelle's Lounge II*) (citations omitted). This court is somewhat hesitant to recognize a Sixth Amendment right to counsel in the criminal forfeiture setting, as it is not entirely clear that this is a critical stage of the criminal proceedings such that Murphy's right to a fair trial is implicated. Ultimately, the court need not reach a decision on this issue for purposes of its current analysis, and proceeds under the assumption that Murphy was entitled to the effective assistance of counsel in this context.

Under these unusual circumstances, in the interest of justice and for the sake of completeness, the court notes that even if it had addressed Murphy's ineffective assistance of counsel claim it would have found no prejudice to Murphy resulting from the performance of his counsel.

Primary among the procedural abnormalities in this case was the March 13, 2003 Order authorizing the seizure and sale of Murphy's assets before Murphy was indicted. Additionally—even after the indictment was returned and Murphy plead guilty to the mail fraud counts—the government sold certain of Murphy's assets (with the consent of Murphy's counsel) at a time when the general question of forfeiture was still open before the court. Once this court became aware of Chief Judge Kocoras's March 13, 2003 Order, as well as the June and August 2003 sales of Murphy's assets, the court held a two-day hearing to address the propriety of these proceedings. The court ultimately found that "the government has overwhelmingly established probable cause in this case for the restraint of these assets both under the facts and under the law." (10/24/2003 Hr'g Tr. at 173:19-21.) Although the court expressed misgivings about the propriety of the sale of Murphy's assets, the court also specifically found that "the value of those items were preserved as much as they could be preserved as a result of that sale." (10/24/2003 Hr'g Tr. at 173:24-174:4.)

Out of an abundance of caution, and in the interest of protecting Murphy's due process rights, the court then stayed the sale of Murphy's remaining assets and conducted a jury trial on the contested forfeiture allegations. Because criminal forfeiture is part of sentencing, *see* 28 U.S.C. § 2461(c), the court instructed the jury to proceed under a preponderance of the evidence standard. It was only after the jury returned its verdict finding that Murphy's assets were subject

15

to criminal forfeiture that the government was allowed to resume the sale of Murphy's remaining assets. As noted above, the government applied the net proceeds from all sales to the repayment of Murphy's restitution obligation.

On the record before the court, the court finds no substantial probability that the outcome of the forfeiture proceedings would have been different if Murphy's counsel had done all that Murphy argues they should have. Ultimately, Murphy's assets would still have been sold by the government through the same auction procedures, and there is no evidence that these assets would have fetched a better price if they were sold after the jury trial rather than before.

Furthermore, in light of Murphy's confession that he had no legitimate source of income from the mid-1980s through February 2003, the court is not convinced that the jury would have made a different determination had Murphy's counsel taken a different strategic approach during the forfeiture trial. Murphy does not direct the court to any specific business records or documents that show a legitimate source of income or demonstrate that the forfeited assets were not paid for by proceeds from the fraudulent investment scheme. *See Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) ("[I]t is the rule of this Court that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions.") (quoting *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996)). Nor has Murphy identified any potential witnesses whom his counsel should have presented on his behalf, or specified what their testimony would have been at trial. *Compare Bruce v. United States*, 256 F.3d 592, 598 (7th Cir. 2001). The court finds no prejudice to Murphy in his counsel's failure to raise an *ex post facto* argument in relation to Murphy's pre-CAFRA assets, as Murphy has not explained

whether or how the total value of the forfeited assets exceeded the value of his post-CAFRA assets—which were unquestionable subject to forfeiture under the statute. Pursuant to 28 U.S.C. § 2461(c), the forfeiture in this case was part of Murphy's criminal sentence; because Murphy's counsel *did* appeal Murphy's sentence, Murphy cannot now argue that his counsel was ineffective for failing to file a notice of appeal in relation to the forfeiture trial. Also, because the jury had already been told that Murphy was convicted of the mail fraud counts, the court finds no prejudice in his appearing before the jury in his prison garb, as Murphy's innocence was not at issue in the forfeiture trial. Lastly, Murphy has articulated no specific prejudice that resulted from his counsel's decision to pursue a jury trial in relation to the forfeiture allegations.

Because the court finds no prejudice resulting from the allegedly deficient performance of Murphy's counsel, the court notes that it would have denied Murphy's ineffective assistance of counsel claim on the merits if the court had not found the claim barred by the plain language of § 2255.

## CONCLUSION

For the reasons set forth above, the court denies Michael J. Murphy's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody." (Dkt. No. 1.) Additionally, because the court has determined that all issues raised by Murphy in his § 2255 motion are either procedurally barred or fail as a matter of law, the court finds there is no need for an evidentiary hearing in this case.

ENTER:

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: February 17, 2009